IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-02708-WYD-KLM

UNITED STATES OF AMERICA,

     Plaintiff,

v.

NANCY D. BERRYMAN;
THE TEMPLE OF THE UNVEILED GOD; and
THE OFFICE OF THE OVERSEER OF DEDICATION TO ENLIGHTENMENT, AND HER
SUCCESSORS, A CORPORATION SOLE;

     Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN  L. MIX**

This matter is before the Court on the United States' **Motion for Summary Judgment Against Nancy D. Berryman, for Default Judgment Against The Temple of the Unveiled God and the Office of The Overseer of Dedication to Enlightenment, and her Successors, a Corporation Sole, and for Sanctions Pursuant to FRCP 37** [Docket No. 52; Filed October 15, 2012] (the "Motion").  On November 21, 2012, Defendant Nancy D. Berryman ("Berryman"), who proceeds in this matter as a pro se litigant, filed a Response [#58].  On December 12, 2012, Plaintiff filed a Reply [#59].  The Motion has now been fully briefed.  Pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.L.Civ.R. 72.1.C., the Motion has been referred to this Court for recommendation [#53].  Having considered the pleadings and the docket in this case, the Court is fully advised of the issues.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#52]

be **GRANTED IN PART** and **DENIED without prejudice IN PART**.

## I. Procedural Background

Plaintiff United States initiated this lawsuit on October 18, 2011. *Compl.* [#1] ¶ 1. The case arises from federal tax liens imposed against Defendant Berryman for her unpaid federal income tax liabilities for 1997, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006 ("tax years at issue"). *See id.* at 4-6. The purpose of this action is to reduce the federal tax assessments for these years to judgment and to foreclose the federal tax liens on real property and water rights presumably owned by Defendant Berryman ("Subject Property").[1] *See id.* Plaintiff asserts that this Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1340, and 1345, and to 26 U.S.C. §§ 7402 and 7403. *Id.* ¶ 3. Plaintiff premises venue on 28 U.S.C. §§ 1391 and 1396, on the bases that the real property at issue is located within this District and that the tax liability giving rise to the foreclosure accrued in this District. *Id.* ¶ 4. Plaintiff requests: (1) that default judgment be entered against Defendants Temple of the Unveiled God ("Temple") and Defendant Office of the Overseer of Dedication to Enlightenment ("Overseer"), finding that they have no interest in the Subject Property, and that Defendant Berryman is the true beneficial owner of the property; (2) that summary judgment be entered against Defendant Berryman, finding that she is indebted to the United States for federal income tax liabilities for the tax years at issue and that the United States has valid and subsisting federal tax liens which attach to all property and rights to

---

[1] Two parcels of property are located at 3295 Tunnel Road, Estes Park, Colorado 80517, and are legally described in paragraph 8 of the Complaint [#1] in this case. Parcel B is commonly referred to as 3295 Tunnel Road, Estes Park, CO 80517, and Parcel A is adjacent vacant land. *Id.* ¶ 9. As the two parcels were bought and transferred together, the Court hereafter refers to them, along with their associated water rights, as the "Subject Property."

property of Defendant Berryman, including her interest in the Subject Property; (3) that "the United States' tax liens encumbering the [S]ubject [P]roperty be foreclosed" and the Court enter an Order of Foreclosure and Decree of Sale setting forth the terms and conditions of the sale; and (4) that, should Defendant Berryman attempt to oppose these claims by introducing previously undisclosed evidence or testimony, the Court order sanctions against Defendant Berryman prohibiting her from introducing such evidence or testimony. *Id.* ¶¶ 26-29, 38, 43, 49.

Plaintiff asserts that the Internal Revenue Service ("IRS") timely and properly made assessments for unpaid federal income taxes and related penalties and interest against Defendant Berryman for the tax years at issue, as set forth in the nine Forms 4340 pertaining to Defendant Berryman. *See Exhibits 2-10, Forms 4340 Certificates of Assessments, Payments, and Other Specified Matters ("Forms 4340")* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]. There is no dispute that Defendant Berryman received notices of her alleged tax liability and demands for payment. *Exhibits 18-23, Notices of Federal Tax Lien* [#52-19, -20, -21, -22, -23, -24]. According to Plaintiff, as of October 1, 2012, the outstanding liability of Defendant Berryman with respect to the assessments made against her for the tax years at issue totals $601,437.27. *Declaration of Lee Routledge ("Routledge Decl.")* [#52-1] ¶ 4; *see Exhibit 1, INTSTD Calculations of Liability* [#52-2].

Neither Defendant Temple nor Overseer has appeared or filed a responsive pleading in this matter, despite having been served with process. *Affidavits of Service* [#10, #14]. Defendant Overseer was served on November 12, 2011, and its answer was due on December 5, 2011 [#10]. Defendant Temple was served on November 27, 2011, and its answer was due on December 19, 2011 [#14]. The Clerk of Court entered default pursuant

to Fed. R. Civ. P. 55(a) against Defendant Overseer on January 10, 2012 [#24], and against Defendant Temple on September 20, 2012 [#51].  To date, no answer or other response has been filed by counsel on behalf of Defendant Temple or Overseer.

## II.  Request for Default Judgment Pursuant to Fed. R. Civ. P. 55

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 55, default may enter against a party who fails to appear or otherwise defend the case brought against him or her.  As a threshold issue, the Court must examine whether default was entered properly against Defendants Temple and Overseer.  In determining whether entry of default is warranted, the Court first considers whether it has personal and subject matter jurisdiction in the case.  *Dennis Garberg & Assoc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 772 (10th Cir. 1997); *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202-03 (10th Cir. 1986).  With regards to personal jurisdiction, the Court must address the adequacy of service of process on defendants against whom default is requested.  *Brill Gloria v. Sunlawn, Inc.*, No. 08-00211, 2008 WL 5651458, at *2 (D. Colo. Aug. 5, 2008).

Even after entry of default, it is for the Court to decide "whether the unchallenged facts create a legitimate basis for the entry of a judgment."  *See Greenwich Ins. Co. v. Daniel Law Firm*, No. 07-2445, 2008 WL 793606, at *1 (D. Colo. Mar. 22, 2008) (citations omitted).  "[A] party is not entitled to a default judgment as of right; rather the entry of default judgment is entrusted to the 'sound judicial discretion' of the court."  *Id.* at *2 (quoting *Cablevisions of S. Conn., Ltd. P'ship v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001)).  Where the complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate.  *Id.* (citing *Weft, Inc. v. G.C. Inv. Assocs.*, 430 F.

Supp. 1138, 1143 (E.D.N.C. 1986)).

Upon review of a motion for default judgment after entry of default, Plaintiff enjoys the benefit of deferential pleading interpretation, and the Court deems the well-pleaded facts of the complaint as true. *Olcott v. Delaware Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003) ("[D]efendant by his default, admits the plaintiff's well-pleaded allegations of fact, is precluded from challenging those facts by the judgment, and is barred from contesting on appeal the facts thus established.") (internal quotation marks and citations omitted); *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011) (citing *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)).   As it is pertinent to the case at hand, the Court notes that corporations cannot appear in this Court without legal representation.   *Harrison v. Wayatoyas, LLC*, 253 F.3d 552, 556 (10th Cir. 2001); D.C.COLO.LCivR 83.3D.

**B.     Analysis**

To obtain a default judgment pursuant to Federal Rule of Civil Procedure 55, Plaintiff must first secure the entry of default against Defendants Temple and Overseer in a court with proper jurisdiction.   Fed. R. Civ. P. 55(a).   Once default is secured, Plaintiff may seek a default judgment pursuant to Fed. R. Civ. P. 55(b) by pleading allegations in its Complaint which, if taken as true, establish that Defendants Temple and Overseer are the nominees or alter egos of Defendant Berryman.[2]

---

[2]   The legal analysis is the same regardless of whether the Court analyzes the question of whether Defendant Berryman placed title to the Subject Property in Defendants Temple and Overseer while retaining all or some of the benefits of being the true owner under federal nominee law, the Colorado state fraudulent transfer law (*see, e.g.*, *United States v. Stonier*, No. 88-993, 1994 WL 395604, at *5 (D. Colo. Feb. 28, 1994), *aff'd* 48 F.3d 1233 (10th Cir. 1995) ("Whether this case is analyzed under a nominee theory or under Colorado's fraudulent conveyance statute, the

### 1.   Jurisdiction

In determining whether the entry of default judgment is warranted here, the Court must first consider whether it may exercise subject matter and personal jurisdiction over the parties and the dispute.  *Dennis Garberg & Assocs.*, 115 F.3d at 772; *Williams*, 802 F.2d at 1202-03.  The Court must do so in consideration of the well-established law that "a judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action."  *Williams*, 802 F.2d at 1203.

### a.   Subject Matter Jurisdiction

Subject matter jurisdiction in this case is based on federal statutes 28 U.S.C. §§ 1331, 1340, and 1345, and pursuant to the Internal Revenue Code, 28 U.S.C. §§ 7401, 7402, and 7403.  *Compl.* [#1] ¶ 3.  "Congress vested in the district courts 'jurisdiction of any civil action arising under any Act of Congress providing for internal revenue.'" *United States v. Christiansen*, 414 F. App'x 218, 220 (11th Cir. 2011) (citing 28 U.S.C. § 1340).  "[D]istrict courts [also] have the right to order the sale of property encumbered by a tax lien, 26 U.S.C. § 7403(c), and 'to render such judgments and decrees as may be necessary or appropriate' to complete that sale[.]"  *Id.* (citation omitted).  Thus, the Court is satisfied that it may exercise subject matter jurisdiction over this lawsuit.

### b.   Personal Jurisdiction

Despite the fact that Defendants Temple and Overseer did not raise personal

---

result is the same.")), or Colorado state constructive trust law (*see, e.g.*, *Shepler v. Whalen*, 119 P.3d 1084, 1089 (Colo. 2005)).  Because Plaintiff pleads sufficient facts to meet the requirements of a nominee theory, the Court declines to address these alternate theories.

jurisdiction as a defense, "[d]efects in personal jurisdiction . . . are not waived by default when a party fails to appear or to respond." *Williams*, 802 F.2d at 1202 (citing *V.T.A., Inc. v. Airco, Inc.*, 597 F.2d 220, 225 (10th Cir. 1979)). Thus, when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the Court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties. *Id.* In reviewing its personal jurisdiction, the Court does not assert a personal defense of the parties; rather, the Court exercises its responsibility to determine that it has the power to enter the default judgment. *Id.* at 1203.

Plaintiff bears the burden of establishing personal jurisdiction. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). "[P]laintiff need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc.*, 115 F.3d at 773. As further explained below, in making a determination on a motion for default judgment, the Court accepts the well-pleaded allegations of Plaintiff's Complaint as true. *Cf. Miller v. Kelly*, No. 10-02132, 2010 WL 4684029, at *4 (D. Colo. Nov. 12, 2010). However, this deferential pleading standard does not extend to statements of legal conclusion couched as fact. *Id.* ("While the Court accepts Plaintiff's well-pled allegations as true for the purpose of establishing personal jurisdiction over Defendant . . . [i]t accords no deference to Plaintiff's conclusory and wholly unsupported allegations.").

The Court must first address the adequacy of service in making its determination as to whether it has personal jurisdiction over the entity Defendants. *See United States v. Elsberg*, No. 08-00522, 2010 WL 5177439, at *2 (D. Colo. Aug. 17, 2010); *Brill Gloria*,

-7-

2008 WL 5651458, at *2.[3]  Plaintiff's Complaint identifies Defendants as "corporations sole."

*See Compl.* [#1] ¶¶ 6-7.  Therefore, the Court analyzes the adequacy of service in the context of Fed. R. Civ. P. 4(h), which establishes the requirements for service of a corporation, partnership, or association.  Rule 4(h) provides that service on a corporation, partnership, or association is adequate if effected "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ."  Fed. R. Civ. P. 4(h)(1)(B).  On November 18, 2011, Plaintiff filed a return of service demonstrating that a private process server personally delivered the summons to Defendant Overseer's registered agent.  *See Summons* [#10].  Therefore, the Court finds that Plaintiff has obtained adequate service with respect to Defendant Overseer.  On December 5, 2011, Plaintiff also filed a return of service demonstrating that a private process server personally delivered the summons to Defendant Temple's registered agent, Defendant Berryman.  *See Summons* [#14].  Therefore, the Court finds that Plaintiff has obtained adequate service with respect to Defendant Temple and has satisfied Fed. R. Civ. P. 4(h) with respect to both entity Defendants.

Plaintiff alleges that both entities are made party to this action pursuant to 26 U.S.C. § 7403(b) because each may claim some interest in the Subject Property.  *Compl.* [#1] ¶¶ 6-7.  Although Defendant Overseer was incorporated and has a registered agent in

---

[3]  While Courts may presume proper service for entry of a default judgment where Defendants answer without contesting service and do not, while represented by counsel, raise the issue by motion, those circumstances are not present here.  *Compare Elsberg*, 2010 WL 5177439, at *2 ("Service of the Elsberg Defendants has not been a straightforward process.") *with GreenTree Transp. Co. v. Speedy Heavy Hauling, Inc.*, No.  10-02657, 2011 WL 5834746, at *2 n.2 (D. Colo. Sept. 19, 2011).

Nevada, Plaintiff alleges that Defendant Overseer resides at 3295 Tunnel Road, Estes Park, CO 80517, the Subject Property. *Id.* ¶ 7.[4] Defendants fail to counter this assertion. At this stage, the Court accepts as true all well-pleaded allegations made by Plaintiff. *Miller*, 2010 WL 4684029, at *4. Thus, on the facts alleged in the Complaint, Defendant Overseer is a resident of Colorado, and personal jurisdiction over this Defendant is proper.

On the other hand, as a court of limited jurisdiction, this Court may only exercise jurisdiction over the non-resident Defendant Temple if: (1) the long-arm statute of Colorado permits personal jurisdiction in this case; and (2) the exercise of personal jurisdiction in Colorado comports with the Due Process Clause of the United States Constitution. *See Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008). The Supreme Court of Colorado interprets Colorado's long-arm statute "to confer the maximum jurisdiction permitted by the due process clauses of the United States and Colorado constitutions." *Archangel Diamond Corp. v. Lukoil*, 123 P.3d 1187, 1193 (Colo. 2005). Therefore, a due process analysis of jurisdiction in this case will also satisfy Colorado's long-arm statute.

The Due Process Clause requires that the Court conduct a two-step analysis of personal jurisdiction. First, the Court must examine "whether the non-resident defendant has 'minimum contacts' with the forum state such that [it] should reasonably anticipate being haled into court there." *TH Agric. & Nutrition, LLC v. Ace European Grp.*, Ltd., 488

---

[4] "[I]t is well settled that a corporation is 'found' in any district in which personal jurisdiction might be obtained over it." *Battle Creek Equipment Co. v. Roberts Manufacturing Co., 460 F. Supp. 18, 22 (W.D. Mich. 1978)*; *see also Shaffer v. Heitner*, 433 U.S. 186 (1977) (holding that where claims to the property itself are the source of the underlying controversy, a state may generally exercise in rem jurisdiction over property located within the state).

F.3d 1282, 1287 (10th Cir. 2007) (citation and quotation mark omitted).   Second, if the defendant has sufficient contacts, the Court then asks "whether the court's exercise of jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice,'" that is, whether the exercise of jurisdiction is "reasonable" under the circumstances.   *Id.* (citation and some quotation marks omitted).

### I.      Minimum Contacts

The "minimum contacts" requirement of due process may be met by showing the existence of general or of specific jurisdiction.   *Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1532 (10th Cir. 1996).   The requisite minimum contacts exist if the non-resident defendant has continuous and systematic contacts with the forum state (general jurisdiction) or if the defendant (I) has purposefully directed activities at forum residents or otherwise acted to avail itself purposefully of the privilege of conducting activities there and (ii) the litigation results from alleged injuries that arise out of or relate to those activities (specific jurisdiction).   *Impact Prods. Inc. v. Impact Prods., LLC*, 341 F. Supp. 2d 1186, 1190 (D. Colo. 2004).

General jurisdiction lies when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise personal jurisdiction over the defendant, even if the suit is not related to the defendant's activities within the state. *Trierweiler*, 90 F.3d at 1533.   Here, there is no clear indication on the face of the Complaint [#1] that Defendant Temple had continuous and systematic contact with the forum state, Colorado.   Plaintiff asserts in its Complaint that Defendant Temple is located at 3782 West Masfield Circle, West Jordan, Utah 84084.   *Compl.* [#1] ¶ 6.   Notably, Plaintiff's private process server failed to personally deliver the summons to this address, as the current

-10-

resident had no affiliation with Defendant Temple.  *See Summons* [#14] at 4.  Service was instead accomplished by serving Defendant Berryman, whom Defendant Temple had indicated to be its legal representative, at the Subject Property.[5]  *Id.* at 2.  Still, Plaintiff fails to provide any allegations that would lead the Court to believe that Defendant Temple's contacts with the forum state of Colorado have been continuous and systematic.  Because Plaintiff has not alleged in its Complaint that Defendant Temple has "continuous and systematic general business contacts" with Colorado, the exercise of general personal jurisdiction over Defendant Temple would be improper.  *See Benton v. Cameco*, 375 F.3d 1070, 1081 (10th Cir. 2004).

To determine whether specific jurisdiction over Defendant Temple is appropriate, the Court must examine whether: (1) Defendant Temple purposefully directed its activities at Colorado or its residents or acted in some other way by which it purposefully availed itself of the benefits and protections of conducting business in Colorado, and (2) Plaintiff's claims arise out of or relate to Defendant Temple's forum-related activities.  *Impact Prods.*, 341 F. Supp. 2d at 1190.  Plaintiff, citing the various transfers of the Subject Property from party to party, alleges in its Complaint that there existed a business relationship between Defendant Temple and the two Colorado residents, Defendants Berryman and Overseer. *Compl.* [#1] ¶¶ 12-15, 30-38.  Plaintiff asserts that on April 29, 2003, Defendant Berryman purportedly transferred the Subject Property to Defendant Temple via two quitclaim deeds that were recorded in the Larimer County Recorder's Office on May 7, 2003.  *Id.* ¶ 12. Subsequently, Defendant Temple purportedly transferred the Subject Property to

---

[5]  Notably, this is the same address where Defendant Berryman was served and where Defendant Overseer is alleged to reside.  *See Summons* [#7, #10]; *see Compl.* [#1] ¶ 7.

Defendant Overseer via a Grant, Bargain, and Sale Deed. *Id.* ¶ 14. Plaintiff also alleges that Defendant Temple continues to pay for utilities and other expenses for the Subject Property, located in Colorado. *Id.* ¶¶ 34, 36. Each of these transfers and business interactions constitutes an activity purposefully directed at residents of Colorado. *See Dudnikov*, 514 F.3d at 1080. Additionally, Defendant Temple has "otherwise acted to avail itself purposefully of the privilege of conducting activities" in Colorado by designating Defendant Berryman, a Colorado resident, as its legal agent for service. *See Summons* [#14]; *Impact Prods. Inc.*, 341 F. Supp. 2d at 1190.

According to Plaintiff, the purported transfers of the Subject Property from Defendant Berryman to Defendant Temple and from Defendant Temple to Defendant Overseer were intended to hinder, delay, or defraud the United States of lawful taxes. *Compl.* [#] ¶¶ 40, 42. Thus, the claims for relief in this case result from alleged injuries that relate to these purposefully directed activities, and accordingly, the Court finds that the Court may exercise specific jurisdiction over Defendant Temple. *Impact Prods. Inc.*, 341 F. Supp. 2d at 1190 (D. Colo. 2004).

### ii.    Traditional Notions of Fair Play and Substantial Justice

Additionally, the Court finds that exercising jurisdiction over Defendant Temple does not "offend traditional notions of fair play and substantial justice." *Impact Prods.*, 341 F. Supp. 2d at 1190. Regarding "traditional notions of fair play and substantial justice," courts consider:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states [or foreign nations] in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).  The Court addresses each of these factors in turn.

First, the Court's exercise of jurisdiction over Defendant Temple would not create an undue burden on Defendant Temple.  "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern . . . . [I]n this age of instant communication, and modern transportation, the burdens of litigating in a distant forum have lessened."  *Peay v. Bellsouth Med. Assistance Plan*, 205 F.3d 1206, 1212-13 (10th Cir. 2000) (citations, quotations, and footnote omitted).  The failed delivery of a summons to Defendant Temple's original address suggests it is no longer located in Utah.  *See Summons* [#14] at 4.  Even if Defendant Temple were still located in Utah, by designating Defendant Berryman as its legal representative in Colorado, Defendant Temple has made the judicial system of Colorado very convenient to access.  Therefore, requiring Defendant Temple to defend this action in Colorado would not create an undue burden.

Second, "[s]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."  *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998).  Plaintiff alleges that the Subject Property at issue is located within this District and that the tax liability giving rise to the foreclosure accrued in this District.  *Compl.* [#1] ¶ 4.  Therefore, any injury to Plaintiff occurred in Colorado and any threatened injury was threatened to occur in Colorado.  Accordingly, Colorado has an important interest in providing a forum for Plaintiff to seek redress for its debts.

The third factor "hinges on whether the [p]laintiff may receive convenient and effective relief in another forum," *Benton*, 375 F.3d at 1079, and the fourth factor asks

-13-

"whether the forum state is the most efficient place to litigate the dispute." *Id.* at 1080 (quotations and citation omitted).   In this case, Colorado is the most efficient forum to litigate this dispute because the Subject Property is located in Colorado and the other two Defendants, including Defendant Temple's designated legal representative, reside in Colorado.   *Compl.* [#1] ¶¶ 6-7.   Therefore, the third and fourth factors weigh in favor of exercising personal jurisdiction over Defendant Temple in Colorado.

The fifth factor "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations." *Dudnikov*, 514 F.3d at 1080 (quotations and citations omitted).   Under 26 U.S.C. § 6321, the IRS may satisfy a tax deficiency by a lien on any rights to property belonging to the taxpayer.   In order to effectuate this authority, it is often necessary to identify whether property is illegitimately held by a third party.   *See* Rev. Rul. 2004-27, 2004-1 C.B. 625. Therefore, exercising personal jurisdiction over Defendant Temple in Colorado furthers the policy interests of all states in identifying nominees in cases of purported tax evasion. Accordingly, the Court recommends finding that exercising jurisdiction over Defendant Temple does not "offend traditional notions of fair play and substantial justice," and that the Court may exercise personal jurisdiction over Defendant Temple as a non-resident defendant.   Thus, jurisdiction is proper over both entity Defendants.

## 2.   Entry of Default Pursuant to Fed. R. Civ. P. 55(a)

Defendants Temple and Overseer have not answered or otherwise responded in opposition to the Complaint, despite proper service.   *Affidavits of Service* [#10, #14]. Additionally, the Court has informed Defendant Berryman that she, as a non-attorney, may not represent Defendants Temple and Overseer in Court.   [#35, #43].   Nevertheless, no

answer or responsive pleading has been filed by either Defendant Temple or Overseer, and the Clerk entered default against Defendants Overseer and Temple on January 10, 2012 [#24], and September 20, 2012 [#51], respectively.  On these facts, Defendants Temple and Overseer have "failed to . . . otherwise defend" this lawsuit, and the entries of default were appropriate.  *See* Fed. R. Civ. P. 55(a); *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 917 (3rd Cir. 1992) (recognizing that Rule 55(a)'s "otherwise defend" language provides the court with inherent authority to enter default even if a party has timely answered); *see also Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1310 (2nd Cir. 1991) (authorizing entry of default where party failed to comply with order to obtain counsel); *Yates v. Portofino Equity & Mgmt Co.*, No. 08-00324, 2009 WL 2588831, at *3 (D. Colo. Aug. 17, 2009) (same); *DC Aviation, LLC v. Avbase Flight Servs., LLC*, No. 06-01960, 2007 WL 2683554, at *1 (D. Colo. Sept. 7, 2007) (same).  There are therefore grounds for the entries of default judgment against these Defendants, and the Court finds that the entry of default was properly made by the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a); *Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc.*, 715 F.2d 1442, 1444 (10th Cir. 1983) (Parties must be held "to a reasonably high standard of diligence in observing the courts' rules of procedure. The threat of judgment by default serves as an incentive to meet this standard.").

### 3.    Default Judgment Pursuant to Fed. R. Civ. P. 55(b)

Having found jurisdiction over this matter and a failure to "otherwise defend" under Rule 55(a), the Court next determines whether Plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 55(b).  Where a complaint states an adequate legal basis for relief against a party in default, default judgment is appropriate.  *Greenwich Ins. Co.*, 2008 WL 793606, at *2 (citing

*Weft, Inc.*, 630 F. Supp. at 1143).   To obtain default judgment against the entity Defendants, Plaintiff must plead allegations in its Complaint which, if taken as true, establish that Defendants Temple and Overseer are the nominees or alter egos of Defendant Berryman, with no separate interest in the Subject Property. *See Olcott*, 327 F.3d at 1125;  *Archer v. Eiland*, 64 F. App'x 676, 679 (10th Cir. 2003) ("all factual allegations in the complaint, except those pertaining to the amount of damages" are taken as true).

"A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001).  It is a well-settled principle that the "Government may foreclose on property held by a nominee of a taxpayer in order to collect the taxpayer's debt."  *United States v. Schaeffer*, 245 B.R. 407, 415 (D. Colo. 1999) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 351 (1977)).  Plaintiff argues that Defendants Temple and Overseer are nominees or alter-egos of Defendant Berryman, and that neither has a separate interest in the Subject Property. *Compl.* [#1] ¶¶ 30-38.  Plaintiff therefore asserts that the IRS is entitled to foreclose on the Subject Property to satisfy Defendant Berryman's outstanding tax liability.  *Id.* ¶¶ 38, 45.

Courts consider several factors when determining whether a title holder is merely a nominee, the most important of which is the taxpayer's ability to exert control, either directly or indirectly, over the property at issue.  *See Schaeffer*, 245 B.R. at 415  (citing *Valley Fin., Inc. v. United States*, 629 F.2d 162, 172 (D.C. Cir. 1980)).  The following considerations are relevant to the Court's determination of whether an individual holds property as the nominee of another:

(1) the lack of consideration paid by the nominee; (2) the control exercised

over the property by the transferor while the title is in the nominee's name; (3) the close relationship between the transferor and the nominee; (4) the use by the transferor of the transferred property; and (5) the lack of interference in [the] transferor's use of [the] property by the nominee . . . Additionally, courts sometimes consider whether the property was placed in the name of a nominee in anticipation of a suit or the occurrence of liabilities.

*United States v. Novotny*, 90 A.F.T.R.2d (RIA) 2002-5684, 2002-5695 through -5696 (D. Colo. 2002) (citations omitted).  Plaintiff argues that the facts in its pleadings are sufficient to show that Defendants Temple and Overseer are mere nominees of Defendant Berryman.

Plaintiff asserts in its Complaint that a business relationship existed between Defendants Temple, Berryman, and Overseer, citing the various transfers of the Subject Property from party to party.  *Compl.* [#1] ¶¶ 12-15, 30-38.  As to the issue of consideration, the Complaint asserts that on April 29, 2003, Defendant Berryman purportedly transferred the Subject Property to Defendant Temple via two quitclaim deeds.  *Id.* ¶ 12.  These deeds cite no consideration, and there is no evidence that Defendant Temple ever paid consideration for these purported transfers.  *Id.* ¶ 33.  Subsequently, Defendant Temple purportedly transferred the Subject Property to Defendant Overseer via a Grant, Bargain, and Sale Deed.  *Id.* ¶ 14.  The Complaint notes that this grant lists a mere $10 as the consideration paid, and goes so far as to claim that even this nominal compensation was never paid.  *Id.* ¶¶ 14, 35.  Given that the first deed cites no consideration and the second deed lists a mere $10 as consideration, the Court accepts the uncontradicted evidence that either little or no consideration was exchanged in these transfers.  *Id.* ¶¶ 12, 14, 33, 35.

The Complaint pleads facts concerning Defendant Berryman's control over the Subject Property, alleging that she has full use, enjoyment, and control over the Subject

Property, without any interference from Defendant Temple or Overseer.  *Id.* ¶¶ 31, 32. Plaintiff also alleges that Defendant Berryman pays no rent to Defendant Temple or Overseer and indirectly pays the other expenses for the Subject Property.  *Id.* ¶¶ 34, 36. Thus, the facts alleged concerning control over the Subject Property weigh heavily in favor of finding that Defendant Berryman is the true beneficial owner of the Subject Property.

The Court also considers the possibility that these transfers, and perhaps even the incorporation of these entities, were merely attempts to avoid tax liability.  A bona fide religious leader, such as a bishop or other authorized religious official, may incorporate as a "corporation sole" under state law, in his capacity as a religious official.  *See, e.g.*, *Berry v. Soc'y of Saint Pius X*, 69 Cal. App. 4th 354 (1999).  A legitimate corporation sole is designed to ensure continuity of ownership of property dedicated to the benefit of a legitimate religious organization, and may own property and enter into contracts as a natural person for the purposes of the religious entity and not for the individual office holder's personal benefit.  *See* C.R.S. § 7-52-103.

The IRS has warned of the rising trend of taxpayers applying for incorporation under the pretext of being an official of a church or other religious organization to avoid tax liability.  *See* Rev. Rul. 2004-27, 2004-1 C.B. 625.  These individuals contend that their income is exempt from taxation because the income allegedly belongs to the corporation sole, which is claimed to be a tax exempt organization.  *Id.*  A taxpayer cannot avoid income tax or other financial responsibilities by purporting to be a religious leader and forming a corporation sole for tax avoidance purposes, and any claims that assignment of income and transfer of assets to such an entity will exempt an individual from income tax are meritless.  Courts have repeatedly rejected similar arguments as frivolous, imposed

penalties for making such arguments, and upheld criminal tax evasion convictions against those making or promoting the use of such arguments. *See, e.g.*, *United States v. Heineman*, 801 F.2d 86 (2d Cir. 1986) (upholding conviction for promoting use of purported church entities to avoid taxes); *United States v. Adu*, 770 F.2d 1511 (9th Cir. 1985) (upholding conviction for aiding and assisting in the preparation and presentation of false income tax returns with respect to false charitable contribution deductions to same type of purported church entities involved in *Heineman*); *Svedahl v. Comm'r*, 89 T.C. 245 (1987) (sanctioning taxpayer for using contributions to purported church entities similar to those involved in *Heineman* to shield income and pay personal expenses).

Plaintiff alleges in its Complaint that each transfer of the Subject Property was made (1) without adequate consideration, and (2) during a period when Defendant Berryman reasonably should have believed that she would incur debts beyond her ability to pay. *Compl.* [#1] 41, 43. According to exhibits presented by Plaintiff, Defendant Berryman incorporated Defendant Temple on October 3, 2002. *Articles of Incorporation* [#52-30]. On April 29, 2003, less than a year later, Defendant Berryman purportedly transferred the Subject Property to Defendant Temple. *Quitclaim Deeds to Temple* [#52-17]. More notably, Defendant Berryman incorporated Defendant Overseer on July 10, 2009. *Entity Details of Overseer* [#52-31]. However, on July 8, 2009, two days before Overseer had been officially incorporated, Defendant Berryman purportedly transferred the Subject Property from Temple to Overseer. *Grant, Bargain, and Sale Deed* [#52-18]; *Berryman Responses and Replies* [#52-29] at 8; *Berryman Depo.* [#52-27] 42:14. In the face of Defendant Berryman's persistent silence on the matter, the Court notes the high danger that these rapid transfers to newly incorporated entities were made in anticipation of

-19-

litigation or other collection action concerning Defendant Berryman's federal tax debts. *Grant, Bargain, and Sale Deed* [#52-18]; *Berryman Responses and Replies* [#52-29] at 8; *Berryman Depo.* [#52-27] 42:14;   *Mitchell v. United States*, 526 U.S. 314, 327 (1999); *Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (quoting (quoting *United States v. Hale*, 422 U.S. 171, 176 (1975)).  According to Plaintiff, the purported transfers of the Subject Property from Defendant Berryman to Defendant Temple, and from Defendant Temple to Defendant Overseer, were intended to hinder, delay, or defraud the United States of lawful taxes, in violation of the Colorado Uniform Fraudulent Transfer Act.  *Id.* ¶¶ 40, 42; Colo. Rev. Stat. § 38-8-105.

After weighing these factors, all of which tend to support a nominee theory, the Court finds that, regardless of whether Defendant Berryman intended to avoid tax liability through these transfers, Plaintiff's Complaint [#1] has sufficiently asserted that Defendants Temple and Overseer are nominees of Defendant Berryman.  Therefore, the Court finds that Defendants Temple and Overseer have no interest in the Subject Property, and respectfully **recommends** that Plaintiff's request for default judgment against Defendants Temple and Overseer be **granted.**[6]

## C.    Recommendation.

For the reasons stated above, the Court respectfully **RECOMMENDS** that Plaintiff's

---

[6]  Although the Court notes that the purported transfer from Temple occurred before Overseer was incorporated, possibly bringing into question whether the Subject Property was ever legally transferred to Overseer, all the factors of the nominee analysis weigh against both Temple and Overseer.  If Temple had never transferred the Subject Property, Temple would still be found to be a nominee of Defendant Berryman with no individual interest in the Subject Property.  As Plaintiff has requested default judgment against both corporations sole, the distinction is irrelevant to the Court's findings.

Motion [#52] be **GRANTED IN PART**.

The Court respectfully **RECOMMENDS** that Plaintiff's request for default judgment against Defendants Temple and Overseer be **GRANTED**.

### III.  Request for Summary Judgment Pursuant to Fed. R. Civ. P. 56(c)

### A.  Standard of Review

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A dispute is "genuine" if the outcome could be decided in favor of either party.  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it could reasonably affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where the movant bears the ultimate burden of proof at trial, it must submit evidence to establish every element of its claims.  *In re Ribozyme Pharm. Inc. Sec. Litig.*, 209 F. Supp. 2d 1106, 1111 (D. Colo. 2002).  Once the Motion has been properly supported, the burden shifts to the non-movant to show the existence of a genuine dispute of a material issue by going beyond the allegations in its pleading and providing "specific facts showing there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  To satisfy its burden of providing specific facts, the nonmoving party must tender affidavits or other competent evidence.  *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).  The factual record and inferences therefrom are viewed in the light most favorable to the nonmoving party.  *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998).  However, the Court is not obligated to consider conclusory statements

or testimony based on conjecture, subjective belief, or inadmissible evidence. *Rice v. United States*, 166 F.3d 1088, 1092 (10th Cir. 1999).

At the outset, the Court notes that a litigant who refuses to present testimony or evidence may have to accept certain negative consequences that flow from that action. *Baxter*, 425 U.S. at 318-19; *United States v. Rylander*, 460 U.S. 752, 758 (1983). Adverse inferences may be drawn against a party who refuses to testify in response to probative evidence offered against her. *Mitchell*, 526 U.S. at 327. "[A]s Mr. Justice Brandeis declared, speaking for a unanimous court . . . '[s]ilence is often evidence of the most persuasive character.'" *Baxter*, 425 U.S. at 319 (*quoting United States ex rel. Bilokumsky v. Tod*, 263 U.S. 149, 153-154 (1923)). "'Failure to contest an assertion . . . is considered evidence of acquiescence . . . if it would have been natural under the circumstances to object to the assertion in question.'" *Baxter*, 425 U.S. at 319 (quoting *Hale*, 422 U.S. at 176). However, in ruling on motions for summary judgment, all inferences are generally drawn in favor of the non-movant. *Byers*, 150 F.3d at 1274. Therefore, where there is any doubt that Plaintiff has clearly met its summary judgment burden, the Court hesitates to draw an adverse inference against one who refuses to provide information at the summary judgment stage. *See In re Marrama*, 445 F.3d 518, 522 (1st Cir. 2006); *see also Mulero-Rodríguez v. Ponte, Inc.*, 98 F.3d 670, 678 (1st Cir. 1996) (explaining that a party's invocation of the Fifth Amendment in discovery does not alter the requirement that inferences for summary judgment be drawn in favor of non-movant); *accord LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 390 (7th Cir. 1995) ("[E]ven in a civil case a judgment imposing liability cannot rest solely upon a privileged refusal to admit or deny at the pleading stage.").

**B.     Analysis**

**1.     Undisputed Material Facts**

Pursuant to Fed. R. Civ. P.  56(c), when submitting a motion for summary judgment for the Court's review, "[a] party asserting that a fact cannot be . . . genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including . . . documents [and] affidavits."  If the responding party "fails to properly address [the movant's] assertion of fact as required by Rule 56(c)," the Court may "grant summary judgment if the motion and supporting materials-including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3).

Plaintiff included a "Statement of Undisputed Facts" in its Motion.  *Motion* [#52] at 1-6.  Review of Defendant Berryman's Response [#58] demonstrates to the Court that Defendant Berryman offers no substantive challenge to the factual statements presented by Plaintiff, nor does Defendant Berryman set forth any other facts which would create a genuine issue for trial. *See Response* [#58].  The Court, after review of Plaintiff's statement of facts and accompanying evidentiary support, concludes that Plaintiff's statement is properly supported.   Thus, the Court recommends finding that the following facts are material and undisputed.

**a.     Federal Income Tax Assessments Against Defendant Berryman**

Plaintiff's exhibits and Defendant Berryman's testimony at her deposition demonstrate that Defendant Berryman received income for each of the tax years at issue that she failed to report to the Internal Revenue Service ("IRS").  *See Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]; *Berryman Depo.* [#52-27] at 73:18-20.  In 1997,

Defendant Berryman received over $300,000 in capital gains from the sale or exchange of assets, over $140,000 in distributions from her IRA retirement accounts, and other income from sources such as Social Security, dividends, and interest income, all of which she failed to report to the IRS. *Exhibit 11, 1997-2001 Form 4549 Income Tax Examination Changes* [#52-12] at 2.   In the following years, Defendant Berryman again received interest, dividends, and IRA distributions, amounting to nearly $120,000 unreported income in 1999, over $98,000 unreported income in 2000, and over $33,000 unreported income in 2001. *Id.* at 8, 13, 18.   In 2006, Defendant Berryman also appears to have received $4,875 in income from Teachers Insurance and Annuity Association – College Retirement Equities Fund ("TIAA-CREF"), in addition to over $50,000 in other income. *Exhibit 12, 2002-2006 Form 4549 Income Tax Examination Changes* [#52-13] at 17-18.   TIAA-CREF, however, withheld $975 in federal taxes from this $4,875, and Defendant Berryman subsequently filed a Form 1040 with the IRS, claiming that this $975 in withheld taxes was her only income and demanding a refund of $975 from the IRS. *Exhibit 13, Form 1040 for 2006* [#52-14].

Plaintiff asserts that the IRS timely and properly made assessments for unpaid federal income taxes and related penalties and interest against Defendant Berryman for the tax years at issue, as set forth in the nine Forms 4340 attached as exhibits to the Motion. *See Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11].   There is no dispute that Defendant Berryman received notices of her alleged tax liability and demands for payment. *Exhibits 18-23, Notices of Federal Tax Lien* [#52-19, -20, -21, -22, -23, -24].

### b.    Acquisition, Transfer, and Ownership of Subject Property

On August 1, 1997, Defendant Berryman purchased the Subject Property with her

own funds via two warranty deeds from Mary and George S. Clausen, both dated August 1, 1997, and both recorded in the Larimer County Recorder's Office on August 6, 1997. *Exhibit 14, Warranty Deeds to Berryman* [#52-15].

On October 3, 2002, Defendant Berryman incorporated Defendant Temple in the State of Utah. *Articles of Incorporation* [#52-30]. Defendant Berryman is the sole director, officer, rector, overseer, and/or member of Defendant Temple. *Id.*; *Berryman Responses & Replies* [#52-29] at 5-6; *Berryman Depo.* [#52-27] 42:14. On July 10, 2009, Defendant Berryman incorporated Defendant Overseer in the State of Nevada. *Entity Details of Overseer* [#52-31]. Defendant Berryman is also the sole director, officer, rector, overseer, and/or member of Defendant Overseer. *Id.*; *Berryman Responses & Replies* [#52-29] at 5-6; *Berryman Depo.* [#52-27] at 47:23-49:11.

On April 29, 2003, Defendant Berryman transferred the Subject Property to Defendant Temple via two quitclaim deeds that were recorded in the Larimer County Recorder's Office on May 7, 2003. *Quitclaim Deeds to Temple* [#52-17]. Plaintiff alleges, and Defendants fail to contest, that Defendant Temple paid no consideration for this transfer. *Id.* at 2, 4; *see Berryman Depo.* [#52-27] 45:14-19, 52:3-53:18. On July 8, 2009, Defendant Berryman, as sole director of Defendant Temple, purportedly transferred the Subject Property from Defendant Temple to Defendant Overseer via a "Grant, Bargain, and Sale Deed." *Grant, Bargain, & Sale Deed* [#52-18]; *Berryman Responses & Replies* [#52-29] at 8; *Berryman Depo.* [#52-27] at 42:14. Notably, this occurred two days prior to Defendant Overseer's incorporation on July 10, 2009. *Entity Details of Overseer* [#52-31]. The Grant, Bargain, and Sale Deed was recorded in the Larimer County Recorder's Office on July 9, 2009. *Grant, Bargain, & Sale Deed* [#52-18]. The Grant, Bargain, and Sale

Deed lists ten dollars as the consideration, but there is no evidence that Defendant Overseer paid this consideration for the purported transfer. *Grant, Bargain, & Sale Deed* [#52-18]; *Berryman Responses & Replies* [#52-29] at 8-10; *Berryman Depo.* [#52-27] at 40:8-43:2; 52:3-53:18; 54:5-12.

Defendant Berryman has not denied that Defendant Overseer paid no consideration for this transfer. *Berryman Responses & Replies* [#52-29] at 8-10; *Berryman Depo.* [#52-27] at 40:8-43:2; 52:3-53:18; 54:5-12. Rather, she denies Plaintiff's request that she admit that Defendant Overseer paid no consideration for this transfer solely on the basis that she does not recognize the entity "Temple" as defined by the United States. *Berryman Responses & Replies* [#52-29] at 5. Defendant Berryman also refused during her deposition to answer almost all questions relating to Defendants Temple and Overseer, including questions regarding whether Defendant Temple paid any consideration for this transfer. *See Berryman Depo.* [#52-27] at 40:14-41:1, 47:16-18, 52:3-53:18.

Notwithstanding these purported transfers, Defendant Berryman admits that she has full use, enjoyment, and control over the Subject Property, without any interference from Defendant Temple or Overseer. *Berryman Responses & Replies* [#52-29] at 8-10. It is uncontested that Defendant Berryman resides at the Subject Property without paying rent to Defendant Temple or Overseer. *Id.* at 4, 8-10. It is also uncontested that Defendant Berryman directly pays for certain expenses for the Subject Property, such as the homeowner's insurance for the Subject Property. *Berryman Depo.* [#52-27] at 56:10-57:12. However, Defendant Berryman contends that this payment should not prove her status as the legal homeowner. *See id.* at 57:11-15 ("[T]hat does not mean that I am the homeowner, because there is collateral protection . . . . The true owner of the [Subject

Property] is protected.   And that is not [Defendant] Nancy Dell Berryman."). She also admits to paying the other expenses for the Subject Property by giving money to Defendant Overseer and by then, as sole officer of Defendant Overseer, paying the expenses using this money.  *Berryman Responses & Replies* [#52-29] at 8-9.

### 2.    Plaintiff's Entitlement to Judgment as a Matter of Law

Plaintiff requests summary judgment foreclosing its federal tax lien on the Subject Property to satisfy Defendant Berryman's outstanding tax liabilities.  Because the United States is the Plaintiff in this suit, it has the ultimate burden of demonstrating that foreclosure is appropriate.  *See In re Ribozyme Pharms.*, 209 F. Supp. 2d at 1111.  Plaintiff must establish that (1) it has a valid federal tax lien, and (2) that the taxpayer has an interest in the property that the lien seeks to foreclose.  *See United States v. Janis*, 428 U.S. 433, 440-41 (1976); *United States v. Miller Bros. Const. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974).

Plaintiff moves for summary judgment in its favor, asking the Court (1) to reduce to judgment federal tax assessments against Defendant Berryman for tax years 1997 and 1999-2006, and (2) to foreclose those tax liens against the Subject Property.  *Motion* [#52] at 1.  In support of the Motion, Plaintiff first contends that it has a valid federal tax lien because it has conclusively established tax liabilities with presumptively valid tax assessments.  *Id.* at 9; *Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]. Plaintiff next argues that it is entitled to foreclose its tax liens against the Subject Property at issue in this suit because Defendant Berryman is the true beneficial owner of the Subject Property.  *Motion* [#52] at 12.

### a.    Valid Tax Lien

Pursuant to 26 U.S.C. § 6321, a tax lien arises when (1) the taxpayer is found to be liable to pay any tax; (2) a demand has been made for such payment; and (3) the taxpayer has refused to pay.  In this case, there is no dispute that Defendant Berryman received demands for the tax liability in question.  *Exhibits 18-23, Notices of Federal Tax Lien* [#52-19, -20, -21, -22, -23, -24].  There is also no dispute that Defendant Berryman has not paid the requested tax liability.  All that remains is it determine her liability.

A "federal tax lien is perfected upon assessment and no further action need be taken."  *Novotny*, 90 A.F.T.R.2d (RIA) at 2002-5695 (citing *United States v. Vermont*, 377 U.S. 351, 352 (1964)).  Further, "[a]n assessment of tax as well as an assessment for failure to file tax returns and make estimated tax payments are entitled to a presumption of validity."  *Id.* at 2002-5694 (citations omitted).  Courts have repeatedly held that a Certificate of Assessments is sufficient evidence that tax assessments were properly made, and that these certificates may be relied on in ruling on a motion for summary judgment.  *See, e.g.*, *Long v. United States*, 972 F.2d 1174, 1181 (10th Cir. 1992); *United States v. Chila*, 871 F.2d 1015, 1017 (11th Cir. 1989); *United States v. Miller*, 318 F.2d 637, 639 (7th Cir. 1963); *see also United States v. Nuttall*, 713 F. Supp. 132, 135 (D. Del. 1989) *aff'd*, 893 F.2d 1332 (3rd Cir. 1989) (finding that Forms 4340 establish government's prima facie case that assessment is valid for purposes of summary judgment); *Nestor v. Comm'r*, 118 T.C. 162 (2002) (holding that it was not an abuse of discretion for the Appeals Officer to use Form 4340 to verify the assessment).  In support of this Motion [#52], Plaintiff has submitted Forms 4340, Certificates of Assessments, Payments and Other Specified Matters, pertaining to Defendant Berryman's federal tax liabilities for each tax year at issue.  *Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11].  Because these

assessments are given a presumption of correctness, the burden now shifts to Defendants to submit admissible evidence to rebut that presumption. *Novotny*, 90 A.F.T.R.2d at 2002-5694.

Defendant Berryman's Response [#58] did not dispute any of the above arguments or set forth any additional facts.  Rather, her Response consists solely of standard tax protestor arguments that the Court has previously rejected and that the IRS has deemed "frivolous." *See The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 44 (Feb. 16, 2012), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on Feb. 21, 2013). Defendant Berryman advanced the frivolous arguments that: (1) this case is one of admiral or maritime jurisdiction but not civil; (2) the United States of America is not the same as the United States, and that it is a private corporation; (3) the United States is not the real party in interest; (4) the United States lacks standing to bring this claim; (5) the United States lacks capacity; (6) the United States has not proved agency; (7) the IRS no longer exists; (8) all tax collectors have been decommissioned; (9) the "Income Tax Law" was repealed in 1939; (10) the United States was dissolved in 1933; (11) federal taxes are voluntary; and (12) no verified assessments exist.

Defendant Berryman's argument that this case is one of admiral or maritime jurisdiction lacks merit.  Plaintiff properly alleged that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1340, and 1345, and to 26 U.S.C. §§ 7402 and 7403. *Compl.* [#1] ¶ 3; *see United States v. Dawes*, 161 F. App'x 742, 745 (10th Cir. 2005) (dismissing as frivolous defendants' assertions that the court lacked subject matter jurisdiction over a suit involving the foreclosure of federal tax liens and noting that the United States had "properly alleg[ed] jurisdiction in its complaint under 26 U.S.C. §§

-29-

7402(a) and 7403 and 28 U.S.C. §§ 1340 and 1345"). The argument that the "United States" is the real party of interest pursuant to Fed. R. Civ. P. 17(a) is also frivolous. *Dawes*, 161 F. App'x at 745-46.

With respect to the argument that the "United States of America" and the "United States" are not the same entity, this argument is patently frivolous. Nothing in 28 U.S.C. § 1746 or the United States Constitution remotely supports Defendant Berryman's assertion that the "United States of America" is a separate legal entity from the "United States," or that such a distinction affects the standing of Plaintiff to bring this suit. *See, e.g.*, *United States v. Jacob*, 242 F.3d 391 (Table) (10th Cir. Nov. 13, 2000). Defendant Berryman also contends that the authority of the Untied States is limited to the confines of the District of Columbia. This argument is also "patently frivolous." *Lonsdale v. United States*, 919 F.2d 1440, 1448 (10th Cir. 1990). Similarly frivolous is the contention that the United States of America does not exist and therefore lacks standing or capacity. *United States. v. UMB Bank Account No. 1290923*, No. 10-cv-00538-REB-MJW, 2013 WL 673984, at *2 (D. Colo. Feb. 22, 2013).

Defendant Berryman also asserts that the IRS no longer exists, that all tax collectors have been decommissioned, and that the "Income Tax Law" was repealed in 1939. *Response* [#59] at 14-17. These arguments each concern the authority of the IRS to collect taxes. There is a plethora of constitutional and statutory authority establishing that the IRS is an agency of the United States with the authority to collect taxes, and the Supreme Court has explicitly stated "that the Internal Revenue Service is organized to carry out the broad responsibilities of the Secretary of the Treasury under § 7801(a) of the 1954 Code for the administration and enforcement of the internal revenue laws." *Donaldson v.*

*United States*, 400 U.S. 517, 534 (1971).  Thus, any argument challenging the authority of the IRS to collect taxes is patently frivolous.  *See, e.g.*, *United States v. Springer*, 427 F. App'x 650, 652-53 (10th Cir. 2011) (recognizing tax protestor arguments challenging the tax collecting authority of the IRS as "patently frivolous"); *United States v. Collins*, 920 F.2d 619, 629 (10th Cir. 1990) ("For seventy-five years, the Supreme Court has recognized that the sixteenth amendment authorizes a direct nonapportioned tax upon United States citizens throughout the nation, not just in federal enclaves; efforts to argue otherwise have been sanctioned as frivolous.") (citations omitted).

As for the argument that federal taxes are "voluntary," the word "voluntary," as used in IRS publications, refers to the practice of allowing taxpayers initially to determine the correct amount of tax and complete the appropriate returns, rather than having the government determine tax liability from the outset.  *See The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 44 (Feb. 16, 2012), http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last viewed on Mar. 22, 2013).  However, the requirement to file an income tax return is not voluntary and is clearly set forth in sections 6011(a), 6012(a), and 6072(a) of the Internal Revenue Code.  *See also* 26 C.F.R. § 1.6011-1(a).  The Tenth Circuit has rejected this argument as frivolous.  *United States v. Tedder*, 787 F.2d 540, 542 (10th Cir. 1986) (upholding a conviction for willfully failing to file a return, stating that the premise "that the tax system is somehow 'voluntary' . . . is incorrect").[7]

---

[7]  Defendant Berryman also asserted in her deposition that the Federal Reserve Notes currently used in the United States are not valid currency and cannot be taxed.  *Berryman Depo.* [#52-27] at 73:18-20.  The courts have rejected this argument on numerous occasions.  *See, e.g.*, *United States v. Rickman*, 638 F.2d 182, 184 (10th Cir. 1980) (affirming a conviction for willfully failing to file a return and rejecting the taxpayer's argument that "the Federal Reserve Notes in which he was paid were not lawful money within the meaning of Art. 1, § 8, United  States

Defendant Berryman lastly argues that the Assessments presented by Plaintiff are "void upon their face" for failing to meet the factors and requirements Defendant Berryman lists in an attachment to her Response.  [#58] at 20, 24.  The IRS has repeatedly refuted the argument that before the IRS may collect overdue taxes, the IRS must provide taxpayers with a summary record of assessment made on a Form 23-C or on another particular form.  *See* Rev. Rul. 2007-21, 2007-1 C.B. 865*; see also The Truth About Frivolous Tax Arguments*, Internal Revenue Service, 42 (Feb. 16, 2012) http://www.irs.gov/pub/irs-utl/friv_tax.pdf (last reviewed on Feb. 21, 2013).  In an Internal Revenue Bulletin published on April 2, 2007, the IRS addressed this very argument:

> [A]lthough an assessment is recorded on a summary record of assessment, such as the Form 23C . . . *there is no legal requirement that a summary record of assessment be provided to a taxpayer before the Service may proceed with collection activity*. Further, if a taxpayer requests proof that an assessment was made, *the Service is not required to provide any particular form* or information in any particular format to the taxpayer *so long as the Service provides the information required by Treasury Regulation § 301.6203-1 to the taxpayer*. Any position to the contrary has no merit and is frivolous.

Rev. Rul. 2007-21, 2007-1 C.B. 865 (emphasis added).  In *Nestor*, 118 T.C. at 166, the tax court held that the petitioner was not entitled to production of Form 23-C at his collection due process hearing, and that it was not an abuse of discretion for the Appeals Officer to use Form 4340 to verify the assessment for purposes of section 6330(c)(1).  Similarly, in *Powell v. Comm'r*, T.C. Memo. 2009-174, 98 T.C.M. (CCH) 56, *6 (2009),  the court awarded a $25,000 penalty against the petitioner for frivolously asserting that the respondent was obligated to produce a Form 23-C where, just as Defendant Berryman has,

---

Constitution").

petitioner had received notices of deficiency. *See Exhibits 18-23, Notices of Federal Tax Lien* [#52-19, -20, -21, -22, -23, -24].

To support a valid assessment, a summary record of assessment must identify the taxpayer, the character of the liability, the taxable period, and the amount of the assessment. 62 C.F.R. § 301.6203-1. In support of this Motion, Plaintiff has submitted Forms 4340 pertaining to Defendant Berryman's federal tax liabilities and civil penalties for each of the tax years at issue. *Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]. Forms 4340 are generated under seal and signed by an authorized delegate of the Secretary of the Treasury, and are thus self-authenticating pursuant to Federal Rule of Evidence 902(1). Forms 4340 are also admissible into evidence as a trustworthy public record. Fed. R. Evid. 803(8). Though the Forms 4340 in this case use the term "assessment date" rather than "23C date," the Forms 4340 plainly set forth the assessment dates and are sufficient to support summary judgment. *See, e.g., Long*, 972 F.2d at 1181; *Chila*, 871 F.2d at 1017; *Miller*, 318 F.2d at 639; *Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]. There are no additional requirements for the IRS to produce either a separate Form 23-C or any of the other documents requested by Defendant Berryman in her attachment. *Response* [#58] at 24.

Every citizen's responsibility to pay taxes is well settled. *See Helvering v. Mitchell*, 303 U.S. 391, 399 (1938); *Tedder*, 787 F.2d at 542; *Abell v. Sothen*, 214 F. App'x 743, 757 (D. Colo. 2007). Defendant Berryman has utterly failed to offer evidence suggesting that she should be exempt from that rule. *See Rylander*, 460 U.S. at 758. Therefore, the Court finds that Defendant Berryman is liable to Plaintiff for unpaid taxes in the years 1997, 1999, 2000, 2001, 2002, 2003, 2004, 2005, and 2006.

### b. True Beneficial Owner

Pursuant to the Internal Revenue Code, the IRS may satisfy a tax deficiency by imposing a lien on any "property" or "rights to property" belonging to the taxpayer. *Drye v. United States*, 528 U.S. 49, 55 (1999) (quoting 26 U.S.C. § 6321). The statutory language "is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Id .* at 56 (internal quotation marks omitted). Thus, the terms "property" and "rights to property" may include "not only property and rights to property owned by the taxpayer but also property held by a third party if it is determined that the third party is holding the property as a nominee . . . of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005); *see G.M. Leasing Corp*, 429 U.S. at 347, 350-51 (holding that luxury or vintage model automobiles transferred by a delinquent taxpayer to a nominee corporation remained subject to the collection of the taxpayer's tax liability); *Macklin v. United States*, 300 F.3d 814, 818 n.2 (7th Cir. 2002) ("In the case of a nominee lien, the IRS proceeds 'against an alter ego or nominee of a delinquent taxpayer for purposes of satisfying the taxpayer's obligations.'") (quoting *United States v. Letscher*, 83 F. Supp. 2d 367, 375 (S.D.N.Y. 1999)).

Default judgment has been granted against Defendants Temple and Overseer, holding that neither has a valid interest in the Subject Property. Thus, as a matter of law, Defendant Overseer holds the Subject Property as a nominee corporation of Defendant Berryman rather than as a valid corporation sole, and Defendant Berryman is the true beneficial owner. Therefore, the Subject Property transferred to Defendant Overseer remains subject to the collection of Defendant Berryman's tax liability. *See G.M. Leasing Corp.*, 429 U.S. at 350-51. The Court finds that the United States has the authority to

encumber the Subject Property with a valid tax lien**.**

###### c.    **Amount of Tax Liability**

In addition to the issues raised above, the parties dispute what amount, if any, Defendant Berryman owes the IRS. *Berryman Responses & Replies* [#52-29] at 2.  At the time Plaintiff filed its Motion on October 15, 2012, Plaintiff contended that Defendant Berryman's outstanding tax liability was $601,437.27. *Motion* [#52] at 17; *Routledge Decl.* [#52-1] ¶ 4.  The Court has carefully reviewed the parties' motions and evidence presented, and has considered them in light of the applicable law.  However, the Court is unable to conclude that Plaintiff has presented sufficient factual allegations as to the *precise amount* of Defendant Berryman's tax liability.  *Compare United States v. McMullin*, 948 F.2d 1188, 1192 (10th Cir. 1991) ("In a suit brought by the government to collect taxes resulting from unreported income, the government generally establishes a prima facie case when it shows a timely assessment of the tax due, supported by *a minimal evidentiary foundation*, at which point a presumption of correctness arises.") (emphasis added), *with United States v. Holmes*, No. 08-02446, 2011 WL 1158675, at *6 (D. Colo. Mar. 20, 2011) (declining to make a summary determination of the government's entitlement to interest and penalties where there were two separate time periods during which interest could be calculated and awarded, and where the government did not fully clarify their calculations of interest under applicable authority).

Defendant Berryman has refused to provide documents or testimony from which her income may be determined, yet argues that the tax liability assessed against her is incorrect. *United States' First Set of Interrogatories, Requests for Production, & Requests*

*for Admission* [#52-28] ¶¶ 1-5; *Berryman Responses & Replies* [#52-29] at 2.   A

defendant's failure to testify regarding the tax liabilities at issue typically allows the court

to draw the negative inference that the testimony would have supported the plaintiff's

position. *See United States v. Sullivan*, 274 U.S. 259, 264 (1927) (holding that a taxpayer

may not, by silence, "draw a conjurer's circle around the whole matter" of his or her tax

liability); *Chaffin*, 689 P.2d at 688-89 (holding that adverse inferences were permissible in

the face of defendants' repeated invocation of Fifth Amendment privilege in discovery

responses); *accord Libutti v. United States*, 107 F.3d 110, 121 (2nd Cir. 1997) (holding that

a court may draw an adverse inference from a party's failure to testify in a civil action).

The following exchange is representative of most of Defendant Berryman's

deposition:

> Q. I'm asking you, sitting here today, to tell me what your understanding of
> who the owner of the Subject Property is?
> A. I refuse to answer on the basis that the Corporations Sole's business is
> the Corporations Sole's business and it is not public. It is private.
> Q. So if I understand you correctly, you're refusing to answer --
> A. Anything about either Corporations Sole. Is that your understanding, yes
> or no; is that your understanding.
> Q. Again, Ms. Berryman, if we could try not to talk over each other, so the
> record is clear. I'm asking you, Is it your testimony that you're refusing to
> answer the question, Who is the current owner of the Subject Property?
> A. I am refusing to answer any questions about either Corporations Sole on
> the basis that they are private and not public.

*Berryman Depo.* [#52-27] at 53:1-18.   Here, Defendant Berryman is attempting to do

precisely what the Supreme Court in *Sullivan* forbade—to draw a 'conjurer's circle' around

any determination of her tax liability for the years at issue by refusing, on the grounds that

the business of a corporation sole is private, to answer nearly every question asked at her

deposition. S*ee generally Berryman Depo.* [#52-27]; *see also Chaffin*, 689 P.2d at 688-89;

*Sullivan*, 274 U.S. at 264; Robert Heidt, *The Conjurer's Circle-The Fifth Amendment Privilege in Civil Cases*, 91 Yale L.J. 1062 (1982).

Plaintiff has provided Forms 4340 for the years in question. *See Exhibits 2-10, Forms 4340* [#52-3, -4, -5, -6, -7, -8, -9, -10, -11]. Accordingly, the government's assessment is entitled to a presumption of correctness. *See McMullin*, 948 F.2d at 1192 (holding that a presumption of correctness attaches to the Commissioner's assessment, once some substantive evidence is introduced demonstrating that the taxpayer received unreported income); *but see Doyal v. Comm'r of Internal Revenue*, 616 F.2d 1191, 1192 (10th Cir. 1980) (citing *Helvering v. Taylor*, 293 U.S. 507, 515 (1935), for the holding that it was proper to remand a case in which the taxpayer had proved the amount of the Commissioner's assessment to be arbitrary and excessive). However, upon a closer analysis of the Forms 4340 presented by Plaintiff, the INTSTD program evidence presented by Plaintiff, and the figures cited in Plaintiff's Motion, the Court is unable to assure itself that the outstanding balance claimed in Plaintiff's Motion is clear on the face of the Forms 4340. *Motion* [#52] at 17; *Exhibit 1, INTSTD Calculations of Liability* [#52-2]; *Exhibit 2 , Form 4340 for 1997* [#52-3]*; Exhibit 4, Form 4340 for 2000* [#52-5].

The sum of $601,437.27 seems to be taken from the Declaration of Lee Routledge, Technical Advisor of the IRS, who determined the figure using the INTSTD computer program to compute the tax liability, penalties, and applicable interest. *Routledge Decl.* [#52-1] ¶¶ 3-4. As far as the Court can determine, the Balance Due for each year's INTSTD calculation is the sum of the figures under "Assessed Total" and "Total Accruals." *Exhibit 1, INTSTD Calculations of Liability* [#52-2]. The "Assessed Total" figures for all years but 1997 and 2000 each seem to be drawn from the "Balance" figure on the

corresponding Form 4340.  *Compare Exhibit 1, INTSTD Calculations of Liability* [#52-2],
*with Exhibits 3, 5-10, Forms 4340* [#52-4, -6, -7, -8, -9, -10, -11].  However, the "Assessed
Total" figure from the year 1997 is nearly nine thousand dollars short of the "Balance" figure
of the corresponding Form 4340, and the Court is unable to determine from Routledge's
declaration, the INTSTD calculations, or the face of the Form 4340 the reason for this
discrepancy.  *Compare Exhibit 1, INTSTD Calculations of Liability* [#52-2] at 2, *with Exhibit
2 , Form 4340 for 1997* [#52-3] at 14.  Similarly, the "Balance" figure from the Form 4340
for the year 2000 indicates an Assessed Total of $9,617.12.  *Exhibit 4, Form 4340 for 2000*
[#52-5] at 9.  However, the "Assessed Total" entered into the INTSTD computer program
for that year was -9,059.28, a figure the Court has been unable to explain from the face of
the year 2000 assessment.  *Exhibit 1, INTSTD Calculations of Liability* [#52-2] at 20.

Had Plaintiff demonstrated in a transparent manner how the liability it requests
follows from the valid assessments presumed from the Forms 4340, the Court would be
prepared to find fully in Plaintiff's favor regarding the amount of the valid tax lien.  However,
without knowing that these figures are accurately and directly drawn from the presumptively
valid assessment figures found in the Forms 4340, the Court hesitates to presume that the
INTSTD Calculations of Liability are alone sufficient to determine the proper amount of
liability.  The Court declines to speculate as to the legitimacy of such a high figure without
confidence that the liability is correct on the face of valid tax assessments.  *Gross v.
Burggraf Constr. Co.*, 53 F.3d 1531, 1546 (10th Cir. 1995).  In the absence of such
certainty, the Court declines to make a summary determination of the government's
entitlement to interest and penalties.  *See, e.g.*, *Holmes*, 2011 WL 1158675, at *6.
However, the Court will permit Plaintiff to submit another dispositive motion for

determination of the total amount of liability in light of these concerns for accuracy on the face of a valid assessment. Defendant may respond in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

There is no admissible evidence to refute Plaintiff's presentation of the facts establishing that (1) it had a valid tax lien and that (2) Defendant Overseer holds the Subject Property as a nominee of Defendant Berryman. Defendant Berryman offers only frivolous arguments and conclusory claims in an attempt to satisfy her burden as the nonmoving party and does not sufficiently satisfy her burden of providing "specific facts showing there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. As such, Defendant Berryman's arguments provide no basis for denial of summary judgment. Plaintiff has met its burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law concerning Defendant Berryman's status as the true beneficial owner of the Subject Property and the validity of the tax lien. Because Plaintiff has met its burden as the party with the ultimate burden of proof at trial, and because Defendant has failed to demonstrate that there are any genuine factual issues for trial, summary judgment should be entered in Plaintiff's favor, excepting only the accuracy of the precise amount of tax liability requested for the tax years of 1997 and 2000. Accordingly, the Court recommends that Plaintiff's request for summary judgment finding valid and accurate tax liability be **granted in part**, for tax year 1999 in the amount of $77,765.47, for tax year 2001 in the amount of $7,264.97, for tax year 2002 in the amount of $19,123.86, for tax year 2003 in the amount of $14,304.81, for tax year 2004 in the amount of $15,611.59, for tax year 2005 in the amount of $14,086.97, and for tax year 2006 in the amount of $13,561.77.

The Court also recommends that Plaintiff's request for summary judgment with respect to the tax years 1997 and 2000 be **denied without prejudice**.  However, the Court will permit Plaintiff to submit another dispositive motion for determination of the total amount of liability for 1997 and 2000 in light of these concerns for accuracy on the face of a valid assessment.  Defendant Berryman may respond in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

**C.     Recommendation**

The Court respectfully **RECOMMENDS** that Plaintiff's request for summary judgment be **GRANTED** regarding Defendant Berryman's tax liability for the tax years 1999, 2001, 2002, 2003, 2004, 2005, and 2006, in the amount of $142,595.58, plus other statutory additions from October 1, 2012, in accordance with 28 U.S.C. § 1961(c)(1) and 26 U.S.C. § 6621, until judgment is paid in full.

Further, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#52] be **GRANTED** with respect to Defendant Berryman's liability for tax years 1997 and 2000 but **DENIED without prejudice** with respect to the validity of the requested amount of tax liability for the tax years 1997 and 2000.

IT IS HEREBY **ORDERED** that within 21 days of the District Judge's resolution of this Recommendation, Plaintiffs shall file either: (1) a motion for summary judgment regarding the amount of Defendant Berryman's liability for the years 1997 and 2000, or (2) a motion to set Final Pretrial Conference regarding Defendant Berryman's tax liabilities for the years 1997 and 2000.

**VI.  Request for Sanctions Pursuant to Fed. R. Civ. P. 37**

## A.     Standard of Review

Federal Rule of Civil Procedure 37 allows a party to move for an order compelling discovery and imposing sanctions in appropriate circumstances.  Pursuant to Rule 37, the Court may prevent a party who has failed to provide information as required by Rule 26(a) or (e) from using information wrongfully withheld in subsequent proceedings.  Under Rule 37(d), if a party fails to answer interrogatories or to respond to a request for production, the Court may, among other sanctions, refuse to allow the disobedient party to present evidence.  The Court may also order payment of "the reasonable expenses, including attorney's fees, caused by the failure" and "may impose other appropriate sanctions," including but not limited to striking pleadings, prohibiting the disobedient party from opposing designated claims, and entering default judgment against the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(I)-(vii), (c)(1)(A), (c)(1)(C).

Rule 37 sanctions are imposed not merely to reimburse the wronged party or penalize the offending party, but to deter others from engaging in similar conduct.  *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).  "[T]he limit of any sanction should be that [penalty] reasonably necessary to deter the wrongdoer."  *White v. Gen. Motors Corp.*, 908 F.2d 675, 685 (10th Cir. 1990).  "[T]he chosen sanction must be both 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'"  *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (citation omitted).

Further, when imposing discovery sanctions against a pro se litigant, the Court carefully considers whether some sanction short of dismissal is appropriate so that the litigant does not unknowingly lose her right of access to the courts because of a technical violation.  *See Ehrenhaus*, 965 F.2d at 920 n.3; *see also Anderson v. Home Ins. Co.*, 724

F.2d 82, 84 (8th Cir. 1983) (dismissing a pro se litigant's complaint with prejudice for failure to answer interrogatories, but only after an extension and a court order to comply).

## B.    Analysis

Citing Defendant Berryman's failure to respond, admit, and answer, Plaintiff requests that, should Defendant Berryman attempt to oppose these claims by introducing previously undisclosed evidence or testimony, the Court order sanctions against Defendant Berryman prohibiting her from introducing such evidence or testimony. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii) (the Court may enter a sanction "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence"); Fed. R. Civ. P. 37(d)(1)(A)(ii) and (d)(3) (a party's failure to answer interrogatories under Rule 33 is sanctionable by any of the sanctions listed in Rule 37(b)(2)(A)(I)-(vi)).

Plaintiff has failed to provide a persuasive basis to impose the preemptive sanctions it seeks. Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless." Rule 37(c)(1)(C) also permits a court to "impose other appropriate sanctions, including any of the orders listed in Fed. R. Civ. P. 37(b)(2)(A)(I)-(vi)." Plaintiff seeks sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(A)(ii), which permits a court, upon determining that a party "fail[ed] to obey an order to provide or permit discovery," to prohibit "the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." However, Plaintiff identifies no specific court order that Defendant Berryman has

disobeyed.  Even assuming such a preemptive sanction is available in the absence of a court order pursuant to Rule 37(c)(1)(C), Plaintiff identifies no bases upon which to impose these sanctions, as its Reply [#59] cites no previously undisclosed evidence presented in Defendant Berryman's Response [#58].  Thus, the Court denies Plaintiff's request for Rule 37 sanctions.

## C.    Recommendation

IT IS HEREBY **ORDERED** that the Motion [#52] is **DENIED** with respect to Plaintiff's request for Rule 37 sanctions.

## V.  Conclusion

For the reasons stated above, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#52] be **GRANTED IN PART** and **DENIED without prejudice IN PART**.

The Court respectfully **RECOMMENDS** that Plaintiff's request for default judgment against Defendants Temple and Overseer be **GRANTED**.

The Court further respectfully **RECOMMENDS** that Plaintiff's request for summary judgment be **GRANTED** regarding Defendant Berryman's tax liability for the tax years 1999, 2001, 2002, 2003, 2004, 2005, and 2006, in the amount of $142,595.58, plus other statutory additions from October 1, 2012, in accordance with 28 U.S.C. § 1961(c)(1) and 26 U.S.C. § 6621, until judgment is paid in full.

Further, the Court respectfully **RECOMMENDS** that Plaintiff's Motion [#52] be **GRANTED** with respect to Defendant Berryman's liability for tax years 1997 and 2000 but **DENIED without prejudice** with respect to the validity of the requested amount of tax liability for the tax years 1997 and 2000.

IT IS HEREBY **ORDERED** that the Motion [#52] is **DENIED** with respect to Plaintiff's request for Rule 37 sanctions.

IT IS FURTHER **ORDERED** that within 21 days of the District Judge's resolution of this Recommendation, Plaintiffs shall file either: (1) a motion for summary judgment regarding the amount of Defendant Berryman's liability for the years 1997 and 2000, or (2) a motion to set Final Pretrial Conference regarding Defendant Berryman's tax liabilities for the years 1997 and 2000.

IT IS FURTHER **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives *de novo* review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated:  April 12, 2013

BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge

-44-